## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KIMBERLY WARNER,         )
                                   )
           Plaintiff,      )
       v.                    )     Case No: 10-01306 (BAH)
                                   )
WILLIAM BOARMAN,       )
                                   )
          Defendant.   )
_____)

## REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

RONALD C. MACHEN JR. D.C. BAR # 447889
United States Attorney
for the District of Columbia

DANIEL F. VAN HORN, D.C. BAR # 924092
Acting Civil Chief

JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0406

## INTRODUCTION

Plaintiff concedes in her opposition that she is not asserting a hostile work environment claim in this action, and now limits her claim to six issues: (1) her nonselection for a promotion to Assistant Production Manager; (2) her receipt of an "excellent" (instead of "outstanding") performance rating for the fourth quarter of 2007; (3) her receipt of an "exceeds expectation" rating for her 2008 performance instead of an "oustanding" rating; (4) the alleged denial of an office; (5) the alleged undermining of her authority in connection with three business decisions (reassigning operators from Laurel; the Middlebrooks detail; and cancellation of vacancies); and (6) the alleged denial of cross-training.  Defendant replies below to Plaintiff's arguments on these issues.

## ARGUMENT

### I.   Plaintiff's Non-Selection Claim Should Be Dismissed

Plaintiff contends that Defendant's proffered explanation for selecting Mr. Lewis for the Assistant Production Manager position – his superior qualifications – was a pretext for discrimination and retaliation.  Plaintiff, however, does not dispute the record evidence establishing Mr. Lewis' qualifications for the position, including his 37 years of experience in the printing trade and his range of experience in the operations of GPO, including his exposure to "every kind of job that comes through the production department." (Def.'s Motion, at 5).  In contrast, it is undisputed that Plaintiff had less than 15 years of experience and that it was limited to the DPC.  (*Id.*)

Plaintiff also offers no evidence to rebut Mr. Crawford's contemporaneous scoring of the candidates on which his selection decision was based.  As reflected on Exhibits 4 and 5 to Defendant's motion, Mr. Crawford scored the applications against the five KSA (knowledge, skills, and abilities) elements for the position, and also considered work experience, years of experience, and the rating received in the performance evaluation submitted by the candidates with their

1

applications.  Plaintiff does not contend that the ranking factors or methodology that Mr. Crawford

utilized were inappropriate.  Nor does Plaintiff contend that, under this admittedly appropriate

ranking system, she should have received a higher score than Mr. Lewis or that she was otherwise

more qualified than Mr. Lewis.  Instead, without any supporting evidence, Plaintiff appears to

contend only that there was "relative similarity" between them (Opp. at 21), itself an admission that

precludes a finding of pretext.  *See, e.g., Porter v. Shah*, 606 F.3d 809, 815-16 (D.C. Cir. 2010) (the

qualifications gap between the two candidates must be "substantial" and reflect a "stark superiority

of credentials" to give rise to an inference of discrimination); *Holcomb v. Powell*, 433 F.3d 889, 897

(D.C. Cir. 2006) ("'In a close case, a reasonable juror would usually assume that the employer is

more capable of assessing the significance of small differences in the qualifications of the

candidates, or that the employer simply made a judgment call.'"); *Stewart v. Ashcroft*, 352 F.3d 422,

429 (D.C. Cir. 2003) ((courts are "not 'superpersonnel departments that reexamine[] an entity's

business decisions.'").

Despite these concessions and the undisputed evidence of Mr. Lewis' superior qualifications,

Plaintiff nevertheless attempts to establish pretext with respect to this promotion decision.  As

discussed below, Plaintiff's attempt to do so fails.

**A.      Plaintiff's Argument Regarding the "Discounting" of Qualfications Is
Based on A Mischaracterization of the Record and Ultimately Immaterial**

Plaintiff mischaracterizes the record by contending that Mr. Crawford's explanation is

pretextual because, in evaluating her candidacy, he discounted her experience in working with the

Congressional Record when he scored her application.  (Opp. at 22-23).  First, Plaintiff takes out

of context an excerpt from Mr. Crawford's EEO affidavit.  There, Mr. Crawford stated that the DPC

"is basically a copy center" and that, while Ms. Warner "has knowledge of files coming out of

Prepress . . .[,] she does not have knowledge in running the stated Congressional work *through the production plant*." (ECF 21-4, Crawford Affid. ¶ 7) (empasis added). Thus, Mr. Crawford did not state that Ms. Warner had no knowledge of the printing of the Congressional Record as asserted in her opposition (Opp. at 23), but rather that he believed her knowledge of how Congressional work is processed "through the production plant" was lacking. When read in context, Mr. Crawfod simply was making the point – which the record amply supports – that Ms. Warner's experience was limited to the DPC and that, therefore, she did not have the "overall qualifications" to be an Assistant Production Manager with responsibility over other facets of production beyond those done in the DPC. (ECF 21-4, Crawford Affid. ¶ 7)

Second, Mr. Crawford testified that he based his rankings solely on Ms. Warner's written application, not on his personal understanding as to the work she actually performed (Ex. 2 to Def.'s Motion, Crawford Dep., at 164-65), and the contemporaneous record supports that testimony. (Ex. 5 to Def.'s Motion). A review of Mr. Crawford's scoring sheets show that Mr. Crawford awarded Ms. Warner a score of 22.5 on the job element section of the ranking form (the portion addressing the five KSA elements) versus a score of 23 received by Mr. Lewis. (Ex. 5 to Def.'s Motion). The only difference in their respective scores in the job element section was with respect to Job Element 2, where Ms. Warner received a 4.5 compared to Mr. Lewis' receipt of a 5.0. (*Id.*) Mr. Crawford otherwise ranked Mr. Lewis and Ms. Warner evenly on the job element section of the ranking form.

Job Element 2 is described in the KSAs as "[d]emonstrated knowledge of current manufacturing and/or print plant methodologies including but not limited to planning, scheduling, quality assurance, performance measurement and metrics, plant safety, workforce selection, hiring, training and development." (Ex. 4 to Def.'s Motion, at 2). Ms. Warner's receipt of a near-perfect score in this job element – despite having experience only in the DPC – substantiates Mr.

Crawford's testimony that he credited Ms. Warner for experience that she claimed in her application even though he doubted its accuracy.[1]

Finally, even if Ms. Warner had received a 5.0 in this job element (the same score received by Mr. Lewis), she still would not have received a higher overall score than Mr. Lewis, whose total score (35.7) was 4.1 points higher than Ms. Warner's score (31.6).   Mr. Lewis, who had 37 years experience and had worked all facets of the production process, received higher point totals than Ms. Warner in the areas of work experience (5.0 versus 3.0) and years of experience (3.7 versus 1.1). (Ex. 5 to Def.'s Motion).  Ms. Warner did not have the same exposure to the production plant processes as Mr. Lewis, nor did she have equivalent years of experience in the printing field, and therefore Mr. Crawford properly scored her lower than Mr. Lewis in these areas.   Ms. Warner does not contend that it was improper for Mr. Crawford to consider overall work experience and years of experience in his scoring of the candidates' applications or that he assigned scores for those two factors incorrectly.   These two factors (totaling 8.7 combined points for Mr. Lewis versus 4.1 combined points for Ms. Warner) accounted for most of the difference in Mr. Lewis' and Ms. Warner's respective scores.   Accordingly, even if Mr. Crawford misunderstood Plaintiff's experience with Congressional work as she contends, that had no material impact on the selection decision and therefore is not evidence of pretext.

### B.    Mr. Crawford's Alleged Statements

Plaintiff also argues pretext based on two statements allegedly made by Mr. Crawford prior to the non-selection decision, the hearsay "let the dogs out" statement allegedly made in November

---

1        This also is substantiated by the fact that Mr. Crawford gave Ms. Warner a score of 5.0 in the "annual performance rating" section of the ranking form even though Ms. Warner did not submit her most recent performance appraisal as was required by the job application, but rather one from December 2003.  (Def.'s Motion, at 5-6).

4

2007 (which she cites as support for her claim of retaliation) and an alleged statement that women in the bindery need to "work extra hard and deal with it" allegedly made in early 2006 (which she cites as support for her gender claim).  (Opp. at 24-25).  Plaintiff also identifies a statement made by Mr. Crawford in his EEO affidavit that she also contends evidences retaliatory intent.  (Opp. at 21).  Defendant did not address the latter statement in its opening brief as Defendant did not understand Plaintiff to be relying on that statement as a basis for her retaliation claim.  Nevertheless, the same arguments raised in Defendant's motion apply with respect to that statement as well.

As a threshold matter, although Plaintiff has attempted to rebut Defendant's arguments that the statements made are inadmissible and/or ambiguous stray remarks, Plaintiff does not dispute the effect of *Forman v. Small*, 271 F.3d 285 (D.C. Cir. 2001), as to the ultimate significance, if any, of these statements.  There, the D.C. Circuit considered statements that were less ambiguous than those at issue here and held that the statements were not sufficient to create a triable issue when the defendant offered a legitimate, non-discriminatory reason for the challenged decision that plaintiff failed to otherwise rebut as pretext.[2]  *Id.* at 293.  Thus, even if the Court were to credit Plaintiff's arguments regarding these statements, these statements at most shift the burden to Defendant to articulate a legitimate, non-discriminatory reason for the selection decision.  As Plaintiff has failed to rebut the evidence of Mr. Lewis' superior qualifications, these statements – even if credited by the Court – are ultimately insufficient to defeat summary judgment with respect to the challenged selection decision.  Defendant nevertheless addresses each specific statement below.

---

[2]    *Forman* also held that such statements were not "direct evidence" of discrimination in the challenged selection decision and that therefore the "dispositive question is whether [plaintiff] showed that the Smithsonian's explanation for its decision not to promote him in 1991 was a pretext for discrimination." *Forman*, 271 F.3d at 293. Ms. Warner likewise concedes that the statements at issue here are not direct evidence of discrimination or retaliation in connection with the challenged non-selection decision, but rather that "the Court should add [them] to Ms. Warner's other evidence to determine if she has 'produced sufficient evidence for a reasonably jury to find that the employer's asserted non-discriminatory reason was not the actual reason.'" (Opp. at 24-25).

### 1.    The Hearsay "Let The Dogs Out" Statement

Contary to Plaintiff's assertion, the so-called "let the dogs out" statement is inadmissible hearsay that cannot be considered on summary judgment.  Plaintiff concedes that the declarant – Mr. Young (allegedly repeating a statement made by Mr. Crawford) – was not involved in the decision to select Mr. Lewis for the Assistant Production Manager position, which was an opening in a different division from the division in which Mr. Young worked.  Mr. Young, moreover, had no supervisory authority over Mr. Crawford or Ms. Warner.   While he had been Ms. Warner's supervisor during the 2001-2005 time period before DPC was moved into the Bindery (Ex. 1 to Def.'s Motion, Warner Dep., at 21, 48; Suppl. Ex. 1 to Def.'s Motion, ECF No. 22, at 263), he had no reporting relationship or any other work relationship with her when the statement was made. Rather, they maintained a personal acquaintance within the office.[3]   (*Id.*)

Mr. Young, therefore, had no role – either general or specific – in the decisionmaking process for the Assistant Production Manager position, nor is there any evidence that he had been empowered to speak on matters of hiring or promotion within GPO.  *Talavera v. Shah*, 638 F. 3d 303, 309 (D.C. Cir. 2011).  Accordingly, the statement is unlike the statement deemed to be an admission in *Talavera*, which was made by a declarant who was "empowered to speak on the subject of promotions in the office," "was involved generally in the promotion process," and whose statement to plaintiff pertained to the "'attitude' of a management official he supervised." *Id.* at 310.

Plaintiff also misconstrues the issue as one involving only the "admissible form" of the

---

3       The only connection that Plaintiff can make between Mr. Young and the claims at issue in this action is the assertion that Mr. Young participated in a meeting in June 2008 to discuss relocating the operators at the facility in Laurel to the main GPO facility.  (Opp. att 19 n. 2)  That meeting is unrelated to the selection decision which occurred approximately six months earlier.  The decision to relocate these operators to the main GPO facility, moreover, was made by Katherine Taylor, not Mr. Crawford.  (Def.'s SOF ¶ 36).  Mr. Young's participation in a discussion regarding the relocation of these operators, therefore, is not sufficient to render his alleged out-of-court statement an admission for purposes of the challenged selection decision, or any other claim at issue in this matter.

evidence. (Opp. at 19). Had Plaintiff submitted a declaration by Mr. Young in which Mr. Young attested to having heard the "let the dogs out" statement by Mr. Crawford, then Plaintiff's argument that the evidence would be subject to conversion into admissible evidence at trial might be correct. In other words, Mr. Young's sworn statement would amount to a proffer as to what Mr. Young would testify to at trial and that trial testimony, if given by Mr. Young, would not be hearsay. But Plaintiff has not offered such a declaration;[4] instead, Plaintiff has offered her own testimony about what Mr. Young allegedly told her about what Mr. Crawford allegedly said. Plaintiff's testimony is not convertible to a form admissible at trial, but remains hearsay. Her proffer consists of her repeating an alleged out-of-court statement by Mr. Young for the truth of the matter asserted that is not an admission and that does not otherwise satisfy a hearsay exception.

In addition, as described by Ms. Warner, the statement has no connection to any protected conduct by Ms. Warner and therefore cannot be indicative of retaliatory intent. (Def.'s Motion, at 9-10). To the contrary, according to Ms. Warner, the statement was tied to the retirement of Mr. Bernazolli, whose position Mr. Crawford assumed, not to her prior protected conduct. (Ex. 1 to Def.'s Motion, Warner Dep., at 38-39; Compl. ¶ 18). Plaintiff contends that Mr. Crawford stated that "since Jeff Bernazolli had retired," he was going to "let the dogs out" on Ms. Warner. (*Id.*). At the time of the alleged statement, Plaintiff had not yet engaged in the protected conduct underlying this action, and her prior protected activity (based on events occurring before DPC was

---

4 Plaintiff notes that her testimony about what Mr. Young allegedly told her should be considered reliable because she contends that she told others about the statement (which is itself hearsay) and that she subsequently spoke to Mr. Young about the statement on two occasions and he did not disavow having made it (also hearsay). (Opp. at 20 n.3). This so-called evidence, itself inadmissible, does nothing to address the evidentiary deficiency with respect to Plaintiff testifying about what someone else told her about what another person allegedly said. Moreover, if Plaintiff was in contact with Mr. Young as she contends, she had the opportunity to obtain a declaration from him, or to notice his deposition, and obtain sworn testimony from him about the alleged statement. The absence of such a declaration or other sworn testimony from Mr. Young speaks volume as to the alleged "reliability" of her account.

moved into the Bindery – Compl. ¶ 8) was not directed against Mr. Crawford. (Ex. 4 to Opp., 2005 EEO Complaint).

Plaintiff also has offered no meaningful explanation as to why Mr. Crawford would have any motivation to retaliate against her when he was not the subject of her prior complaint. *Gilbert v. Napolitano*, 670 F.3d 258, 263 (D.C. Cir. 2012); *Vickers v. Powell*, 493 F.3d 186 (D.C. Cir. 2007).[5] In *Gilbert*, the D.C. Circuit reaffirmed that "no reasonable jury could 'find a retaliatory motive at work' where [the] selecting official never 'participate[d] in any of the alleged incidents" that made up the employee's underlying claim. *Gilbert*, 670 F.3d at 263. The same principle applies here.

In addition, it is undisputed that Mr. Crawford gave Ms. Warner the benefit of the doubt in evaluating her application for the Assistant Production Manager position even though he believed she had exaggerated her qualifications. (*See supra* note 1 and accompanying text). Such favorable treatment negates any inference that he was acting with retaliatory motive towards her. Plaintiff's theory of retaliation is logically incoherent and, as such, the so-called "let the dogs out" statement, even if credited by the Court, is at best an irrelevant, ambiguous stray remark.

Ultimately, even if the Court were to conclude that the statement is potentially indicative of retaliatory intent (which Defendant denies), the statement is not sufficient to overcome the undisputed evidence of Mr. Lewis' superior qualifications, which the record establishes was the determinative factor in the selection decision. *Ginger v. District of Columbia*, 527 F.3d 1340, 1345 (D.C. Cir. 2008) (summary judgment granted notwithstanding evidence of discriminatory motive where plaintiff failed to rebut as pretext the non-discriminatory reason proffered for the challenged

---

5       Contrary to Plaintiff's contention, it is appropriate for the Court to consider on summary judgment whether a Plaintiff can establish the requisite causal connection to support a retalation claim even if the Defendant has articulated a legitimate, non-retaliatory reason for the challenged decision.   The Court held as much in *Gilbert*. *Gilbert*, 670 F.3d at 262.

decision). In other words, even if the Court were to assume that Mr. Crawford harbored some retaliatory motive based on the "let the dogs out" statement, Plaintiff cannot establish that she would have received the Assistant Production Manager position "but for" her prior protected conduct. *Ponce v. Billington*, 2012 U.S. App. LEXIS 10025, at *14 (D.C. Cir. May 18, 2012).

Plaintiff also has not alleged in the Complaint, nor argued in her opposition, a mixed-motive theory of retaliation. Her Complaint alleges that the challenged actions were taken "because of" her gender and/or prior protected conduct (Compl. ¶ 2, 31, 34-35), and she contends in her opposition that the alleged adverse actions were "motivated" by retaliation and discrimination (Opp. at 1). *See, e.g., Clipper v. Billington*, 414 F. Supp. 2d 16, 24-25 (D.D.C. 2006) (treating term "motivated by" and "but for" as synonymous). She nowhere alleges or contends that retaliation and discrimination were "motivating factors" in those challenged actions as is required to assert a mixed-motive theory. *Ponce v. Billington*, 2012 U.S. App. LEXIS 10025, at *9-10 (plaintiff "required to argue that race was a 'motivating factor' if it wished the court to consider a mixed-motive theory when ruling on a summary judgment motion"); *Ginger v. District of Columbia*, 527 F.3d 1340, 1345 (D.C. Cir. 2008) (summary judgment inquiry limited to evaluation of pretext where plaintiff failed to advance a mixed-motive theory).

In any event, the majority of courts in this District do not recognize a "mixed motive" theory of retaliation and Plaintiff does not argue otherwise. *See, e.g., Hayes v. Sebelius*, 762 F Supp. 2d 90, 115 (D.D.C. 2011) ("this Court holds that—as a matter of law—[the plaintiff] may not bring a motivating-factor retaliation claim"); *Beckford v. Geithner*, 661 F. Supp. 2d 17, 25 n.3 (D.D.C. 2009) ("it is generally established that the 'mixed-motive' theory is not available to prove a retaliation claim"); *but see Nuskey v. Hochberg*, 730 F. Supp. 2d 1, 5 (D.D.C. 2010). Thus, Plaintiff must show that retaliation was the "but for" cause of her non-selection to prevail on that claim,

*Ponce,* 2012 U.S. App. LEXIS 10025, at *14, and, as discussed above, she cannot do so because the ultimate selectee (Mr. Lewis) was more qualified for the position. Accordingly, the "let the dogs out" statement is ultimately immaterial to the summary judgment analysis.

### 2.    Mr. Crawford's Reference to Plaintiff's EEO Settlement

Plaintiff notes in her opposition that Mr. Crawford stated in his EEO affidavit that she "only met the qualification to apply for the Assistant Production Manager job because of her pay, and she received the pay as the result of the settlement," referring to a prior EEO settlement, and that "[s]he is being paid more than some managers in the Bindery who have years of craft experience." (Opp. at 21; ECF No. 21-4, Crawford Affid. ¶ 7). Plaintiff mischaracterizes these statements by contending that they reflect "disagreement, if not outright disgust, with Ms. Warner's 2007 EEO statement." (Opp. at 21). Neither the context in which the statement was made, nor the statement itself, supports that characterization.

When read in context, Mr. Crawford simply was explaining that Ms. Warner "did not have the overall background needed" for the Assistant Production Manager position and that, as explained to him by Human Capital, she was deemed qualified for the position because of her rate of pay, not her experience. (ECF No. 21-4, Crawford Affid. ¶ 7). Mr. Crawford does not state that he disagreed with Ms. Warner's 2007 EEO settlement as Plaintiff contends. To the contrary, he referenced the settlement earlier in the Affidavit in response to an allegation by Ms. Warner (not raised in this lawsuit) that "she received unequal pay for the work she does." (*Id.* ¶ 2). In the context of addressing that allegation, he stated that he knew "there was a settlement resulting from an EEO case" and that, while he had nothing to do with that EEO matter or the negotiation of the settlement, he was aware that "the settlement was that she got paid at the rate of the Assistant Foreperson in the Binding Division" and "got the title of Chief of the Digital Print Center." (*Id.*) Mr. Crawford

10

offered no opinion for or against the settlement, but simply recited the fact of the settlement and its provisions as a response to Plaintiff's assertion that she received unequal pay.   These paragraphs of Mr. Crawford's EEO affidavit do not reflect any retaliatory animus on his part.

### 3.   The Alleged Gender-Based Statement

Defendant established in its opening motion that the alleged statement by Mr. Crawford in early 2006 that "[b]eing a woman in production, [she] would have to work extra hard and deal with it" also is too ambiguous and remote in time to suggest any gender bias by Mr. Crawford in his selection decision two years later.   (Def.'s Motion, at 10-11).   Plaintiff does not offer any meaningful response to those arguments.   While she contends that this comment is "directly tied to Mr. Crawford's determination that Ms. Warner was not qualified for and should not be hired for the Assistant Production Manager position" (Opp. at 24), the statement on its face indicates no such connection.   *Isse v. Am. Univ.*, 540 F. Supp. 2d 9, 30 (D.D.C. 2008) ("direct evidence does not include stray remarks in the workplace, particularly those made by . . . decisionmakers unrelated to the decisional process itself"); *Sewell v. Chao*, 532 F. Supp. 2d 126, 138 n.8 (D.D.C. 2008) (stray remarks made by a supervisor must be connected to an employment decision to create a triable issue of discrimination").   Standing alone, therefore, the statement cannot defeat summary judgment.   At most, it shifts the burden to the Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's non-selection, which Defendant has done.   *Forman*, 271 F.3d at 293.

### C.   Plaintiff's Alleged Statistical Evidence

Plaintiff also alleges pretext based on a superficial and ultimately irrelevant discussion of so-called "statistical evidence." (Opp. at 25).   Plaintiff alleges that GPO's workforce is 55% female and that the PG-14 pay level (the pay grade of the Assistant Production Manager position) is 37% female.   (*Id.*)   Plaintiff, however, does not cite any statistics as to the percentage number of females

within the overall GPO workforce actually qualified to apply for PG-14 positions, nor does she offer

any expert testimony (or any evidence for that matter) as to whether the alleged under-representation

is statistically significant based on the available sample size. Thus, Plaintiff utterly fails to account

for other possible variables that could account for the disparity she cites and fails to establish that

the disparity is even significant from a statistical perspective.

Plaintiff's so-called "statistical evidence" therefore proves nothing. *See, e.g., Thomas v.*

*Chao*, 2003 U.S. App. LEXIS 9707, at *7 (D.C. Cir. May 19, 2003) (upholding the exclusion of

statistical evidence in the absence of an expert to testify that the "alleged underrepresentation was

statistically significant"); *Frazier v. Consolidated Rail Corp.*, 851 F.2d 1447, 1452 (D.C. Cir. 1988)

("Statistical calculations performed on data in discrimination cases are not probative of anything

without support from an underlying statistical theory. . . . [T]he sample may be so small that a slight

change in the data would present an entirely different result. In addition, disparities may be

explainable by other factors, such as . . . varying levels of qualifications among applicants."); *Segar*

*v. Smith,* 738 F.2d 1249, 1274 (D.C. Cir. 1984) (same).

### D.     Plaintiff's Non-Selection to Other Positions

In the same vein as her so-called "statistical" argument, Plaintiff makes an entirely

superficial argument that her lack of success in obtaining other positions since 2005 also is evidence

of discrimination. In her opposition, she suggests that she applied for 14 jobs since her EEO

activity in 2005 (Opp. at 25), but a review of Plaintiff's declaration (and the Complaint) shows that

she is double counting and that, other than the Assistant Production Manager position (for which

Mr. Lewis was selected), she applied for six positions during the referenced time period. (Warner

Decl. ¶ 23, 25; Compl. ¶ 13-14) When asked about these positions at her deposition, Plaintiff

admitted that she did not know the qualifications of the individuals who were selected. (Ex. 1 to

Def.'s Motion, Warner Dep., at 223-228).  She contends only that she was on the best qualified list along with the ultimate selectee in most if not all of these vacancies. (Opp. at 25).  But the law in this Circuit is clear that, without some showing that she was significantly more qualified than the ultimate selectees, Plaintiff's reference to these other non-selections cannot be evidence of discrimination. *See, e.g., Porter,* 606 F.3d at 815-16; *see also Adeyemi v. District of Columbia,* 525 F.3d 1222, 1227 (D.C. Cir. 2008) ("The qualifications gap must be great enough to be inherently indicative of discrimination.").

## II.    Plaintiff's Claim Regarding Her 2007 Performance Evaluation Fails

Defendant is entitled to summary judgment on Plaintiff's claim regarding the "excellent" rating that she received for her Q4 2007 performance (one level below "outstanding" under the system in place at the time) for several reasons.  First, Plaintiff failed to raise this claim with an EEO counselor within the latter of (a) 45 days of being on notice of her rating or (b) 45 days of the effective date of the rating (if that rating could be construed as a "personnel action' within the meaning of 29 C.F.R. § 1614.105(a)(1)).  Plaintiff's argument that Defendant waived the failure to timely exhaust defense should be rejected because Plaintiff misrepresented in the EEO process the date of her receipt of the rating and it was not until discovery in this litigation that Plaintiff conceded receiving the rating two months earlier (January 2008) than she previously had represented (March 2008).  Second, Plaintiff was not treated differently than any other supervisor in that rating (no supervisor in the Bindery received an outstanding rating for the Q4 2007 performance period) and has therefore failed to establish that the reason for the rating – that her peformance fell within the excellent range – was a pretext for discrimination or retaliation.  Therefore, she has failed to establish that Defendant discriminated against her based on her sex.  She also has failed to establish

any causal connection between that rating and the prior protected conduct that occurred approximately 10 months earlier.

### A.    Defendant Did Not Waive The Untimeliness Defense

Plaintiff failed to raise any claim with respect to the Q4 2007 rating with an EEO counselor within 45 days of being on notice of the rating.  With respect to that rating, Plaintiff contends that, based on what appear to be erasure marks on the document, she had originally been rated "outstanding" but the rating had been changed to "excellent" by the time it was finalized and presented to her. (Compl. ¶ 16).  While Plaintiff alleges in the Complaint that she received the written evaluation reflecting the "excellent" rating for Q4 2007 in March 2008 (*id.*), she admitted at her deposition that she first received that document in January 2008, observed at that time the apparent erasure marks in the "outstanding" column on the rating form, signed the rating form, and believed at that time that she had been discriminated against based on her gender and also subject to retaliation. (Ex. 1 to Def.'s Motion, Warner Dep., at 57-62, 72).  Thus, the March 2008 date was the date she received a copy of the rating for her records (Opp. at 6; Warner Decl. ¶ 32), not the date she first saw and signed the rating, which occurred in January 2008.  Because Plaintiff did not seek EEO counseling until April 9, 2008, any claim with respect to the Q4 2007 rating is untimely because the claim was not raised within the required 45-day period.

Plaintiff attempts to avoid this result by contending that Defendant waived an untimeliness defense by issuing a Final Agency Decision ("FAD") without raising that defense.  Waiver, however, is an equitable consideration, *Bowden v. United States*, 106 F.3d 433, 439 (D.C. Cir. 1997), that is not available here because Plaintiff provided misleading information, under oath, during the EEO process as to when she received the challenged performance rating. In the sworn Affidavit that she submitted to the EEO investigator, she affirmed under oath that: "In March 2008

14

I received a performance evaluation where it was clearly visible that I had originally been given all 'outstanding' ratings but someone had erased the rating and lowered them to 'excellent.'" (Ex. 1 hereto, Warner EEO Affid. ¶ 9). In making that representation, she omitted that she had been shown the same rating in January 2008, and thereby gave the impression that the first time she received and had knowledge of the rating was March 2008 (within 45 days of her EEO contact). The agency relied on that representation in the FAD, reiterating the alleged receipt date of March 2008. (ECF No. 24-20, at 11, reciting that "Complainant maintains that the performance evaluation received in March 2008 was clearly changed . . . ."). Accordingly, the agency did not raise a timeliness defense with respect to that claim in the FAD because, based on the record presented by the EEO investigator, there was no basis to assert that defense.

Having provided misleading information during the EEO process, Plaintiff cannot rely on an equitable principle – waiver – to preserve her untimely claim. In *Bowden*, on which Plaintiff relies, the Court made clear that its finding of waiver was not intended to "create a sweeping principle concerning waiver of administrative time limits" but requires the court to engage in a "balancing of equities" under the particular facts of each case. *Bowden*, 106 F.3d at 439. In *Bowden*, that balance weighed in favor of finding waiver because the agency failed to raise untimeliness "until the third round in court" even though it "could easily have raised the thirty-day limitation during the administrative process." *Id.*

Here, in contrast, the balance of equities weighs against a finding of waiver. Plaintiff, for her part, provided misinformation to the EEO investigator as to the date that she received the Q4 2007 performance rating and the agency relied on that misinformation in evaluating that claim in its FAD. Unlike in *Bowden*, the agency could not have "easily" raised the 45-day filing period as a defense to this claim because the record before it – based on Plaintiff's sworn representation that

15

she received the rating in March 2008 – did not support that defense.

The doctrine of waiver, moreover, is based on "equitable considerations," *Bowden*, 106 F.3d at 438, and lacking "clean hands," Plaintiff cannot rely on equity to preserve her untimely claim. *See, e.g., Udall v. Littell*, 366 F.2d 668, 675 (D.C. Cir. 1966) ("It is elementary, of course, that one seeking equity must do equity and must show 'clean hands' at the threshold."); *Goings v. Court Servs. & Offender Supervision Agency*, 786 F. Supp. 2d 48, 65 (D.D.C. 2011) ("He who comes into equity must come with clean hands"); *Flemming, Zulack & Williamson, LLP v. Dunbar*, 549 F. Supp. 2d 98, 110-11 (D.D.C. 2008) (same); *Monument Realty LLC v. Wash. Metro. Area Transit Auth.*, 540 F. Supp. 2d 66, 82 (D.D.C. 2008) ("Equity does not require blamelessness with respect to other matters, but it does require that one seeking relief must have acted fairly and without fraud or deceit as to the controversy at issue.").

Plaintiff has offered no other basis to excuse her untimely EEO contact. While Plaintiff contends that she was not satisfied with her "excellent" rating when she first received it in January 2008 and sought an explanation from Ms. Taylor and Mr. Crawford, she does not contend that either individual gave her any reason to believe that her rating was not final or might be changed. To the contrary, by Plaintiff's own account, Ms. Taylor did not give her any explanation for the rating but simply told her "to sign the evaluation but that my signature would only mean that I acknowledged seeing the evaluation," "that my bonus would not be processed if I did not sign," and that "I should take up any concerns I had with Mr. Crawford." (Warner Decl. ¶ 30). Plaintiff contends, moreover, that she thereafter "emailed Mr. Crawford to schedule a meeting with him to ask "why I had not received scores of 'outstanding'" and "why checkmarks had been erased from the 'outstanding' column." (*Id.* ¶ 31). According to Plaintiff, Mr. Crawford never responded to her request for a meeting and did not meet with her (*id.*), and therefore, never gave her any reason to believe the

16

rating would be changed.    As held in *Foster v. Gonzales*, 516 F. Supp. 2d 17 (D.D.C. 2007),

moreover, the pursuit of an internal appeal on the merits of a personnel action "neither renews nor

tolls [the] 45-day deadline" to contact an EEO counselor. *Id.* at 26; *see also Del. State Coll. v.

*Ricks*, 449 U.S. 250, 261 (1980) (holding that "the pendency of a grievance, or some other method

of collateral review of an employment decision, does not toll the running of the limitations period").

Accordingly, Plaintiff's own evidence precludes any argument for tolling the 45-day filing period.

Equally unavailing is any argument by Plaintiff based on the date her rating was processed

for bonus purposes by Human Capital.  In that regard, Plaintiff notes that her written evaluation was

"stamped by Human Capital subdivisions on February 21, 2008," "signed by a budget official on

that date," and that a copy was then provided to Plaintiff for her records in March 2008. (Opp. at

5-6).  None of these allegations renders her EEO contact timely.

The applicable regulations provide that "[a]n aggrieved person must initiate contact with a

Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a

personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1).

The 45-day period may be extended if the employee "did not know and reasonably should not have

known" that the discriminatory matter or personnel action occurred. *Id.* 1614.105(a)(2).  "In such

a case, the 45-day clock is tolled until the aggrieved employee has a 'reasonable suspicion' that she

has been the victim of discrimination." *Saunders v. Mills,* 2012 U.S. Dist. LEXIS 15695, at *10

(D.D.C. Feb. 8, 2012).  Plaintiff admits that, in January 2008, she both was on notice of the rating

she was receiving for her Q4 2007 performance and believed at that time that she was the victim of

discrimination and retaliation. (Ex. 1 to Def.'s Motion, Warner Dep., at 57-62, 72).  Although she

did not retain a copy of her written rating at that time, her own admissions establish that she knew

or reasonably should have known as of January 2008 that the alleged "discriminatory matter or

personnel action occurred."

This is not a situation, moreover, where Plaintiff's claim is timely because the "effective date" of the challenged personnel action fell within the 45-day period even though plaintiff had prior notice outside the 45-day period that the action was to occur. *Stewart v. Gates,* 786 F. Supp. 2d 155, 165 (D.D.C. 2011) (the 45-day period "runs from the effective date of the personnel action, not the notification date"). Plaintiff's bonus based on her "excellent" rating became effective on February 17, 2008 (Ex. 1 to Smith Decl.), and by Plaintiff's own admission, the rating was transmitted to Human Capital subdivisions no later than February 21, 2008. (Opp. at 5-6). Therefore, to the extent the rating could be construed as a "personnel action" within the meaning of 29 C.F.R. § 1614.105(a)(1),[6] its effective date was no later than February 17, 2008 (the date a bonus was issued based on the rating), which is still more than 45 days from April 9, 2008, the date of EEO contact. (Even if the February 21, 2008 date is used, it also is outside the 45-day period). Because Plaintiff was on *prior* notice in January 2008 of the rating she would be receiving – and not first on notice in March 2008 as she attested in the EEO process – the 45-day period began to run *no later than* the effective date of the rating, *Stewart,* 786 F. Supp. 2d at 165, and her EEO contact was not timely.

**B.      Plaintiff Has Failed to Establish Any Evidence of Discrimination or Retalation Regarding the Q4 2007 Rating**

Defendant disagrees that it failed to put forth record evidence establishing the legitimate, non-discriminatory reason for Plaintiff's "excellent" rating. The reason for the rating is apparent on the face of the evaluation – Plaintiff's performance fell within the excellent not outstanding range. It is undisputed, moreover, that the fourth quarter of 2007 was the first quarter that GPO

---

6      Defendant denies that the written evaluation and rating itself constitute a "personnel action" within the meaning of 29 C.F.R. § 1614.105(a)(1). While the performance bonus tied to that rating might constitute a personnel action, that bonus was effective on February 17, 2008, as reflected on the SF-50 attached as Exhibit 1 to the accompanying Smith declaration.

instituted bonuses for supervisors based on performance, which is why supervisors were rated only for that quarter. (Def. SOF ¶ 16). Because ratings were tied to bonuses for the first time in that quarter, it was more difficult to acheive an outstanding rating for that quarter and no supervisor in the Bindery received such a rating. (ECF No. 21-4, Crawford Affid. ¶ 5) Plaintiff's alleged receipt of "outstanding" ratings in the past had no bearing on the newly implemented evaluation program in which employees were held to a heightened standard to obtain an "outsanding" rating. (*Id*.).

Based on this record evidence, to avoid summary judgment, Plaintiff must do more than establish a *prima facie* case;[7] she must identify evidence that raises an inference of discrimination or retaliation with respect to that rating. Plaintiff, who apparently concedes that no other supervisor in the Bindery received an "outstanding" rating, cannot establish any disparate treatment and otherwise has failed to establish that the rating was motivated by her gender or prior EEO conduct. Plaintiff also cannot raise an inference of retaliation because the rating was issued approximately 10 months after any prior protected conduct. Her last act of protected conduct prior to the issuance of the Q4 2007 performance rating was her EEO settlement in March 2007 (Compl. ¶ 8) and, as addressed above, Plaintiff has offered no reason why Mr. Crawford would be motivated to retaliate against her based on prior EEO conduct that was not directed towards him. *See, e.g., Mayers v. Laborers' Health & Safety Fund*, 478 F.3d 364, 369 (D.C. Cir. 2007) (eight month gap from final protected activity is too long to establish causation); *see also Gilbert v. Napolitano*, 670 F.3d 258, 263 (D.C. Cir. 2012); *Vickers v. Powell*, 493 F.3d 186 (D.C. Cir. 2007).

---

7       As noted in Defendant's opening brief, Plaintiff has failed to establish the extent to which this rating (as well as the 2008 rating) had on her performance bonus. As set forth in the accompanying Smith Declaration, the bonus difference was not significant in either case: $217 in 2007 and $345 in 2008 based on the maximum possible award, and even less if calculated using the minimum score for an oustanding rating. (Smith Decl. ¶ 3-4) To the extent such differentials qualify to make the ratings adverse employment actions (which Defendant does not concede – *see* Def.'s Motion, at 11 n.3), the limited monetary differential cuts against a finding that the ratings she received were motivated by retaliation or discrimination.

Plaintiff's evidence of so-called irregularities should be rejected. Plaintiff takes out of context Mr. Crawford's testimony regarding the erasure marks on the Q4 2007 rating, referring to it as evidence of an "irregularity" in the process (Opp. at 4-5), when, as the complete record demonstrates, Mr. Crawford simply was expressing confusion caused by the copying of an exhibit at a high resolution, which exaggerated markings that had been erased before the rating had been finalized. Plaintiff admitted at her deposition that she was presented with and signed three originals of the Q4 2007 performance rating (an original "supervisor" copy, an original "employee" copy, and an original "employment" copy). (Ex. 1 to Def.'s Motion, Warner Dep., at 58-60). She ultimately retained the original of the "employee" copy, which was marked as Exhibit 9 to Mr. Crawford's deposition. (Ex. 2 hereto, Crawford Dep., at 88-90).

The exhibit that Plaintiff initially presented to Mr. Crawford at his deposition (marked by Plaintiff as Exhibit 8 to the Crawford deposition)[8] contained xeroxed copies of the "supervisor" copy, the "employee" copy, and the "employment copy" of the Q4 2007 rating. One of the copies within Exhibit 8 (the "employment copy") had been copied under a resolution that made it appear as if checkmarks appeared in *both* the "outstanding" and "excellent" columns for certain performance factors. Mr. Crawford stated that he had not seen a review having "double checks" before and on that basis initially commented that that xeroxed copy (the third page of Exhibit 8) appeared to have been "doctored." (Ex. 2 hereto, Crawford Dep., at 80-82, 87-90, 102-04). The record demonstrates that the confusion was caused by the copying of that page of the exhibit at a high resolution that exaggerated the erasure markings in the "oustanding" column, giving the appearance of "double checks." (*Id.* at 352-53). Mr. Crawford also explained that erasure marks

---

8      That exhibit also was marked as Exhibit 3 to Plaintiff's deposition and appears as Exhibit 8 to Defendant's motion (ECF No. 21-8, at 13). Exhibit 9 to the Crawford deposition was filed as Exhibit 7 to Defendant's motion.

are not uncommon. He testified that rating officials often fill out evaluations in pencil initially before reviewing the evaualtions with the reviewing official and then write over the pencil markings in ink or erase the markings where no longer applicable once they decide on the final rating. (*Id.* at 354-56) Attached as exhibit 2 to the accompanying Smith Declaration are other examples of the Q4 2007 ratings of "excellent" for other supervisors in the Bindery showing similar erasure marks.

### III.    Plaintiff's Retalation Claim Regarding Her 2008 Performance Evaluation Fails

Plaintiff contends that her 2008 rating was based on retaliation (not gender bias) for her having filed an EEO complaint on July 3, 2008 and August 21, 2008. (Compl. ¶ 23, 25, 35; Opp. at 31-35; Def.'s Motion, at 14 n.5). The rating was dated November 24, 2008 by Plaintiff's direct supervisor at the time, Walter Wingo, and was dated November 26, 2008, by Plaintiff's second level supervisor, Katherine Taylor. (Taylor Ex. 2). As a threshold matter, Plaintiff has failed to meaningfully address the lack of temporal proximity on which to establish a causal connection between that evaluation and her EEO activity. (Opp. at 32). Plaintiff appears to rely on a so-called "pattern of antagonism" but has not idenfied any conduct by Mr. Wingo or Ms. Taylor (the rating official and reviewer respectively) that could constitute such a pattern. Plaintiff cites the Q4 2007 evaluation, but Ms. Taylor and Mr. Wingo were not the rating and reviewing officals for that review (Def. SOF ¶ 14-15; Ex. 8 to Def's Motion). Plaintiff also cites the "let the dogs out" statement, but that was not a statement attributed to Ms. Taylor or Mr. Wingo. Finally, Plaintiff's contention that the issue of causation "drops out of the picture" because a legitimate, non-discriminatory reason for the rating has been preferred is incorrect. *See, e.g., Gilbert,* 670 F.3d, at 262. Plaintiff's claim of retaliation should be dismissed for lack of causation.

Plaintiff's claim also should be dismissed because Ms. Taylor and Mr. Wingo were justified in not awarding Plaintiff an "oustanding" rating. The Court need look no further than Plaintiff's

rating in element 2 to grant summary judgment for Defendant.   Plaintiff did not receive an

"outstanding" rating in element 2 because she failed to ensure that 7B cards were up-to-date and that

corrective actions were timely. (Ex. 3 to Def.'s Motion, Taylor Dep., at 48-50).   A 7B card tracks

an employee's disciplinary history and, as a supervisor, Ms. Warner's performance plan required

that she "ensure 7B cards are up to date," that "corrective actions are timely," and "sufficiently

documented by the supervisor of record."   (Ex. 11 to Def.'s Motion, at 5; Ex. 3 to Def.'s Motion,

Taylor Dep., at 49-50).

The 7B card and associated requirements were part of the "meets expectation" standard and

by failing to meet those requirements Plaintiff could have received an "unacceptable" rating for this

element.   That would have translated to "0 out of 10" points (instead of the "8 out of 10" she

received) for this element and resulted in at best an overall "achieved expectations" rating of 65 (out

of 75 points) if Plaintiff had received perfect scores in all other elements.   (Ex. 11 to Def.'s

Motion, at 5; Ex. 12 to Def.'s Motion).   However, because Ms. Warner had otherwise met the

requirements for an "outstanding" rating for this element, her supervisors decided to give her an

"exceeds expectation" for element 2 in the spirit of fairness. (Ex. 3 to Def.'s Motion, Taylor Dep.,

at 49)   They did not have to do so, however, and her failure with respect to the 7B cards alone

justifies her receipt of an overall "exceeds expectation" rather than "outstanding" rating regardless

of the other two elements at issue.

Moreover, there is no genuine dispute that Plaintiff failed to meet the 7B card requirements.

Plaintiff failed to meet this requirement because, as a supervisor, she failed to ensure that her direct

reports maintained up-to-date 7B cards of the individuals they supervised. (Ex. 3 to Def.'s Motion,

Taylor Dep., at 48-50).   While Plaintiff asserts her view that she was responsible only for her own

7B cards, and not for ensuring that her subordinate supervisors maintained up-to-date 7B cards of

22

their subordinates (Warner Decl. ¶ 37), her perception is not controlling. "It is settled that 'it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011).

Plaintiff does not dispute that the 7B card of one of her subordinate supervisors was deficient and has offered no evidence, other than her own opinion (and that of her subordinate, Ms. Jones), that she was not responsible for that deficiency as the overall supervisor of the section. That is not sufficient to create a "genuine issue" of fact in the face of otherwise undisputed testimony of Ms. Taylor (the Superintendent of the Bindery), particularly when Plaintiff's performance plan required for a "meets expectations" rating that she "ensure corrective actions are timely . . . and sufficiently *documented* by the supervisor of record" (Ex. 11 to Def.'s Motion, at 5) (emphasis added). *Brady v. Sergeant of Arms*, 520 F.3d 490, 496 (D.C. Cir. 2008)("the issue is whether *the employer honestly and reasonably believed* that the underlying . . . incident occurred."

Plaintiff's attempt to create a factual dispute as to the two other job elements is immaterial given the deficiency with respect to the 7B cards, which alone justified the "exceeds expectation" rating and entitles Defendant to summary judgment on this claim.   Nevertheless, as to job element 6 (job description proposal), Plaintiff does not dispute that the document in the binder she submitted to substantiate her prior year's performance was undated and that she never provided the document physically to her supervisors by the required deadline. (Ex. 1, Warner Dep., at 91-93, 95; Ex. 3 to Def.'s Motion, Taylor Dep., at 59-60).[9]   As to job element 4, Plaintiff does not adequately substantiate her contention that her subordinate, Ms. Jones, had a similar requirement in her

---

9       The errata to Ms. Taylor's deposition, attached behind Exhibit 3 to Defendant's motion, clarifies that Ms. Taylor's testimony on page 60 (line 10:14) was: "So I supplemented that with things that I had.  For the develop job description proposal by August 30th, she had an undated Word document, and I had no records of it ever being submitted to me." (Ex. 3 to Def.'s Motion, Taylor Dep., at 60, as corrected by errata).

performance plan and received credit without providing the "percent time" data.   Ms. Jones'

statement in her declaration is not an adequate substitute for Ms. Jones' actual performance plan,

which is not included with the opposition.   (Jones Decl. ¶ 24) Moreover, Plaintiff herself was the

rating official for Ms. Jones and, therefore, Plaintiff's decision to overlook that deficiency in one

of her subordinates is not evidence that she was treated disparately by her superiors.

## IV.   The Alleged Denial of an Office and Opportunity to Cross-Train

Plaintiff offers no evidence to dispute Defendant's legitimate, non-retaliatory reasons for her

lack of an office.  Without contradicting the facts underlying those reasons, Plaintiff simply makes

the conclusory assertion that the reasons "are both pretext and besides the point." (Opp. at 36-37).

That is not sufficient to defeat summary judgment.  Plaintiff's argument is otherwise based on

assertions that contradict her deposition testimony, wherein she testified that she was able to perform

her job duties notwithstanding any office-space limitations and had been doing so for many years,

all the while receiving "exceeds expectations" or higher performance reviews.  (Ex. 1 to Def.'s

Motion, Warner Dep.,  at 113-114).   Plaintiff, moreover, has failed to establish any causal

connection between her office situation and her EEO activity (to the contrary, according to Plaintiff,

the issue has been outstanding since before she ever engaged in protected conduct).  Accordingly,

her retaliation claim based on the lack of an office fails for all of the reasons identified in

Defendant's motion.

Ms. Warner has failed to meaningfully respond to Defendant's arguments for dismissal of

the alleged denial of cross-training claim.  Defendant does not believe it is necessary to restate the

evidence and argument set forth in its opening brief, but does note the following in reply to

Plaintiff's arguments.  Plaintiff acknowledges that "no formal cross-training program exists" and

fails to rebut Ms. Taylor's explanation that Mr. Mahoney was not cross-training in the DPC, but had

been assigned to assist Ms. Warner with the administrative functions of running a training program in the DPC. (Opp. at 43). Plaintiff instead relies on the conclusory assertion that Mr. Mahoney "seemed to be checking on the work that Ms. Warner was doing." (*Id.*) Such speculation is not competent summary judgment evidence. For all of the reasons stated in Defendant's opening brief, summary judgment should be granted on Plaintiff's cross-training claim.

## V.   Plaintiff's Claims As To Three Business Decisions Should Be Dismissed.

Plaintiff's claims regarding the reassignment of employees from Laurel to the main GPO building, the cancellation of vacancies and the Middlebrooks detail are all business decisions that the Court is not in a position to second-guess. (*See* Def.'s Motion, at 22-25). In addition to all of the other arguments presented by Defendant, which are incorporated herein by reference, Plaintiff has offered no evidence to rebut the legitimate, non-discriminatory reasons for these decisions, including the inefficiencies of staffing the Laurel facility with only two employees, the budgetary reasons underlying the cancellation of the vacancies, and how the position of the Congressional Publishing Services Group at GPO dictated the outcome of the negotiations over the Middlebrooks detail. (*Id.*). Plaintiff's claims as to these issues, therefore, should be dismissed.

Respectfully submitted,

RONALD C. MACHEN JR. D.C. BAR # 447889
United States Attorney for the District of Columbia

DANIEL F. VAN HORN, D.C. BAR # 924092
Acting Civil Chief

By: _____/s/_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0406